UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HERNANDEZ,

                                  CASE NO. 2:11-CV-10407
            Plaintiff,       JUDGE PATRICK J. DUGGAN
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DETROIT-WAYNE COUNTY
COMMUNITY MENTAL HEALTH
AGENCY and NURSE CHEETUM,[1]

           Defendants,
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MARCH 28, 2012
MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 27)**

**I.**     **RECOMMENDATION:** The Court should grant defendants Detroit-Wayne County Community Mental Health Agency (DWCCMHA) and Cheetum's March 28, 2012 motion for summary judgment (Doc. Ent. 27).

**II.**     **REPORT:**

**A.**     **Plaintiff Filed the Instant Case Pro Se on February 1, 2011.[2]**

---

[1]The correct spelling of the individual defendant's name is Tango Cheatham. *See* Doc. Ent. 27-1.

[2]Hernandez has filed three other cases in this Court: (A) On February 16, 2011, Hernandez filed *Hernandez v. City of Detroit, et al.* (Case No. 2:11-cv-10625-LPZ-RSW), regarding which Judge Zatkoff eventually entered a June 27, 2011 order of dismissal and a judgment. (B) On February 24, 2011, Hernandez filed *Hernandez v. Glanda* (Case No. 2:11-cv-10755-GCS-MKM), regarding which Judge Steeh eventually entered an April 5, 2011 opinion and order of summary dismissal. (C) On February 28, 2011, Hernandez filed *Hernandez v. City of Detroit, et al.* (Case No. 4:11-cv-10805-MAG-RSW), regarding which Judge Goldsmith eventually entered a June 22, 2011 opinion and order of summary dismissal.

Plaintiff Christopher D. Hernandez (#09-016542 (WCJ) / #364043 (MDOC)) is serving a sentence for the June 6, 2009 offense of Mich. Comp. Laws § 750.89 ("Assault with intent to rob and steal; armed.").

Hernandez filed the instant pro se, prisoner civil rights complaint on February 1, 2011 while incarcerated at the Wayne County Jail (WCJ) in Detroit, Michigan. Doc. Ent. 1 at 1-4. Defendants are the Detroit-Wayne County Community Mental Health Agency (DWCCMHA) and Nurse Cheetum. Doc. Ent. 1 at 1.[3]

On February 28, 2011, defendants filed an answer, jury demand and affirmative defenses. Doc. Ent. 6.[4] Plaintiff filed a response to this filing on March 7, 2011. Doc. Ent. 9.

**B.    Discovery closed on July 15, 2011 and dispositive motions were due on August 15, 2011.**

Initially, discovery was due by April 15, 2011 and dispositive motions were due on May 15, 2011. Doc. Ent. 10. However, on June 2, 2011, I entered an order extending the discovery deadline to July 15, 2011 and the dispositive motion deadline to August 15, 2011. Doc. Ent. 17.[5]

---

[3]On February 7, 2011, Magistrate Judge Whalen entered two orders (Doc. Entries 4 and 5), one of which granted plaintiff's February 1, 2011 application to proceed without prepayment of fees (Doc. Ent. 2).

[4]On November 30, 2011, Judge Duggan interpreted the February 28, 2011 Answer (Doc. Ent. 6) "as having been filed on behalf of both defendants[,]" Doc. Ent. 26 at 4.

[5]This order effectively addressed defendants' May 23, 2011 ex parte motion to enlarge time. Doc. Ent. 15.

Hernandez's sentence was imposed on July 15, 2011. *See* www.michigan.gov/corrections, "Offender Search," Case No. 09029462-01-FC (Wayne County).[6] He is currently incarcerated at the MDOC's Saginaw Correctional Facility (SRF) in Freeland, Michigan.

## C. During September and November 2011, the Court Denied without Prejudice Plaintiff's Request for Discovery and Denied Plaintiff's Motion for Default Judgment.

On March 16, 2011, plaintiff filed a request for counsel and 30 day time extension to obtain discovery information for the Court (Doc. Ent. 11).[7] On May 3, 2011, plaintiff filed a motion for discovery material (Doc. Ent. 13).[8]

On September 9, 2011, I entered an order (Doc. Ent. 20) construing plaintiff's motion for discovery (Doc. Ent. 13) as a request for discovery and denying without prejudice plaintiff's

---

[6] By its February 4, 2011 filing, the Clerk of the Court notified the parties of their responsibility to notify the Court of a change in address. Doc. Ent. 3. Plaintiff has done so on three occasions. *See* Doc. Ent. 18 (to Cooper Street Correctional Facility (JCS) at 3100 Cooper Street, Jackson, Michigan); Doc. Ent. 19 (to Carson City Correctional Facility (DRF)); Doc. Ent. 21 (to DRF).

[7] Attached to this filing are letters from the DWCCMHA regarding Case Nos. 15100 & 15101 (Doc. Ent. 11 at 4-10), a DWCCMHA Recipient Rights Complaint form (Doc. Ent. 11 at 11) and Recipient Rights Appeal materials (Doc. Ent. 11 at 12-13). The letters from DWCCMHA cite sections of Michigan's Mental Health Code. *See* Doc. Ent. 11 at 7 & 9 (Mich. Comp. Laws §§ 330.1708, 330.1722, 330.1778; and Administrative Rules, Section R330.7001).

Plaintiff claims this is all of the information he has for discovery in this case. According to plaintiff, DWCCMHA has "the [original] complaint and all other complaints / information regarding this case." Doc. Ent. 11 at 2.

[8] Defendants filed a response to this motion on May 23, 2011 (Doc. Ent. 14).

motion; denying plaintiff's motion to writ plaintiff out to argue his Complaint in person (Doc. Ent. 16); and directing the clerk to correct Plaintiff's address on the docket to the Charles Egeler Reception & Guidance Center (RGC) at 3855 Cooper Street, Jackson, Michigan.[9]

On October 12, 2011, plaintiff filed a motion for default judgment. Doc. Ent. 22. On October 21, 2011, I entered a report recommending that the Court deny plaintiff's motion. Doc. Ent. 24. On November 3, 2011, plaintiff filed an answer to my report and recommendation. Doc. Ent. 25.

On November 30, 2011, Judge Duggan entered an opinion and order (Doc. Ent. 26) denying plaintiff's motion for default judgment (Doc. Ent. 22). Among other things, Judge Duggan noted that, "despite seeking and receiving an extension of the deadline to file a dispositive motion (*see* Doc. 17), Defendants did not file a dispositive motion before the cut-off date." Doc. Ent. 26 at 4 n.3.

**D.     Although plaintiff was assigned pro bono counsel on June 22, 2012, plaintiff Hernandez is proceeding pro se as of January 24, 2013.**

On October 21, 2011, I entered an order (Doc. Ent. 23) conditionally granting plaintiff's March 7th and March 16th requests for the appointment of counsel (Doc. Entries 8 and 11). On June 22, 2012, I entered an order of assignment of counsel. Doc. Ent. 28; *see also* Doc. Ent. 31 (Notice of Appearance).

---

[9]Plaintiff's subsequent, September 23, 2011 notice of address change to DRF sought, in part, to correct allegations made by defendants and their counsel. For example, plaintiff sought written confirmation of defense counsel's insinuation that plaintiff stated, "officers were trying to kill him" on June 16, 2010. *See* Doc. Ent. 21 at 1-2 ¶ 2. Plaintiff also seeks the "false paper that [he] was allegedly [supposed] to sign to accept meds." Doc. Ent. 21 at 2 ¶ 2.

4

I noticed a status conference for October 3, 2012. Doc. Ent. 32. On October 4, 2012, I entered an order providing that plaintiff's counsel should "file an amended complaint by stipulation and order, or motion for leave to file amended complaint by December 1, 2012." Doc. Ent. 33. On November 19, 2012, I entered a stipulated order extending that deadline to January 15th. Doc. Ent. 34.

However, on January 10, 2013, Pepper Hamilton LLP filed a motion to withdraw as counsel for plaintiff Christopher D. Hernandez. Doc. Ent. 35. On January 15, 2013, a copy of this motion was served by mail upon plaintiff at SRF. Doc. Ent. 37.

Judge Duggan referred this motion to me for hearing and determination. Doc. Ent. 36. On January 24, 2013, I entered an order (Doc. Ent. 38) granting plaintiff's counsel's motion.

**E.     Defendants' March 28, 2012 Motion for Summary Judgment is pending.**

Judge Duggan has referred this case to me to conduct pretrial matters. Doc. Ent. 7. Currently before the Court is defendants' March 28, 2012 motion for summary judgment. Doc. Ent. 27. Therein, defendants argue:

> A.     Plaintiff Hernandez has failed to state a viable claim against Defendants for providing inadequate medical care.
>
> B.     Nurse Cheetum is entitled to qualified immunity.
>
> C.     Plaintiff Hernandez has not alleged that any of Defendants['] policies or practices have caused him to suffer an injury.

Doc. Ent. 27 at 4, 11-18.[10]

---

[10] Attached to the motion is the March 23, 2012 affidavit of Tango W. Cheatham. Doc. Ent. 27-1.

Pursuant to my January 24, 2013 order, plaintiff's response was due on or before February 15, 2013. Doc. Ent. 39. Copies of this order were sent to plaintiff at 10522 Boyer Road, Carson City, MI 48811[11] and at Saginaw Correctional Facility (SRF) at 9625 Pierce Road, Freeland, MI 48623.

However, on January 30, 2013, the Court was informed that the copies of my January 24, 2013 orders (Doc. Ent. 38 and Doc. Ent. 39) sent to plaintiff at SRF were returned to the Court. Doc. Ent. 40. Therefore, on February 1, 2013, another copy of my January 24, 2013 order requiring response (Doc. Ent. 39) was sent to plaintiff via mail to SRF.

To date, plaintiff has not filed a response.

**F.     Upon consideration of plaintiff's verified complaint, his verified response to defendants' answer, defendants' motion and the affidavit of defendant Cheetum, the Court should grant defendants' motion for summary judgment.**

**1.**     Plaintiff Hernandez's verified complaint against defendants DWCCMHA and Cheetum states as follows:

> Around April 2010 on the mental health floor when it was time to take the afternoon meds, a nurse Cheetum was passing out the meds. When she appro[a]ched my cell she gave me 7 pills and a liquid that I cannot d[e]scribe. I asked this nurse what the medication was and she began to scre[a]m "take the [expletive] pills[.]" She was torturing this inmate mental[l]y. I've never been tre[a]ted like this, so I took the pills and the liquid and she still would not tell me what it was. This inmate got sick and had to go to the hospital or medical. After

---

[11]On August 9, 2009, Boyer Road Correctional Facility (OTF) consolidated with Carson City Correctional Facility (DRF). The address for each is 10274 Boyer Road, Carson City, MI. *See* www.michigan.gov/corrections, "Prisons." On September 23, 2011, plaintiff filed a notice of change of address/contact information to DRF. Doc. Ent. 21.

For whatever reason, several matters in this case were served upon plaintiff at 10522 Boyer Road. *See* October 21, 2011 certificate of service (for Doc. Ent. 24); June 22, 2012 certificate of service (for Doc. Ent. 28); and January 24, 2013 certificate of service (for Doc. Entries 38 and 39). The address 10522 E Boyer Rd, Carson City, MI 48811 is attributable to the Carson City Correctional Facility and the State of Michigan. *See* www.superpages.com.

>   this Nurse Cheetum had the officers on the afternoon shift jump this inmate. [A]lso when this inmate was moved to the old jail Nurse Cheetum was giving this inmate a hard time. She told this inmate "she holds grudges." All this because this inmate wrote a Recipient Rights Complaint[] form[12] to the [DWCCMHA] about the Abuse and Neglect code Sec. 722: Admin. Rule 330.7035.[13] After this inmate moved to the old jail Nurse Cheetum was still co[m]ing to be his nurse. She would befriend the officers and have them write tickets on this inmate. She was also giving this inmate a liquid that he was not [supposed] to be getting and it made this inmate [hallucinate] and this inmate woke up the next day pois[o]ned with his ½ whole body swo[l]len. Nurse Cheetum has been torturing this inmate by getting his visits [taken] and when he is in the med line 1st she says "Hernandez get the [expletive] out [of] the way," and she serves the other inmates 1st[.] [T]his nurse tr[i]ed to kill this inmate! This nurse has been torturing this inmate and this is my next step.

Doc. Ent. 1 at 3-4. Within his request for relief, plaintiff states:

>   I request the court to stop the account and the payment for the nurse Cheetum, and [DWCCHA]. I request the court to terminate Nurse Cheetum's employment he[re] at the Division 2 Wayne County Jail. I request for the court to order the defendants to pay all the damage ([m]ental stress, [a]nguish and medical and [h]ospital [b]ills).

Doc. Ent. 1 at 3.

**2.**     In his March 7, 2011 verified filing, plaintiff addresses defendants' February 28, 2011 answer (Doc. Ent. 6). First, plaintiff responds to defendants' statement of facts (Doc. Ent. 6 at 1), claiming that defendant Cheetum "is guilty of giving [him] meds that were not his and verbal[l]y abusing [him] in front of staff, in particular a[n] officer witness." Doc. Ent. 9 at 1. According to

---

[12]The DWCCMHA has a Recipient Rights Complaint Form. *See* Doc. Ent. 11 at 11.

[13]In **Michigan's Mental Health Code**, the **"Rights of Recipients of Mental Health Services"** are codified at Mich. Comp. Laws §§ 330.1700-330.1758. Within **Michigan's Administrative Code**, those attributable to the **Michigan Department of Community Health** are R 330.7001 through R 330.7260.
    This report assumes plaintiff is referring to Mich. Comp. Laws § 330.1722 ("Abuse or neglect of mental health service recipients") and Mich. Admin. Code R. 330.7035 ("Abuse or neglect of recipients.").

plaintiff, Cheetum "could have killed or injured [plaintiff] ve[r]y ba[d]ly[.]" Doc. Ent. 9 at 1-2. Plaintiff claims he became sick and once ended up in the hospital. Doc. Ent. 9 at 2.

Next, as to defendants' request that the Court deny the complaint with prejudice (Doc. Ent. 6 at 2), plaintiff alleges that defendant Cheetum could have killed him and did injure him to the point of hospitalization. He claims Cheetum "is extre[me]ly irate with patients and believes she can distribute meds like a doctor." Doc. Ent. 9 at 2.

Also, as to defendants' jury demand (Doc. Ent. 6 at 3), plaintiff concurs with the request for a jury trial but asks that the Court "writ him out of the County Jail[.]" Also, plaintiff requests all information on this matter from the Michigan Department of Community Health, Administrative Tribunal and Appeals. Doc. Ent. 9 at 2.

Finally, plaintiff addresses defendants' affirmative defenses (Doc. Ent. 6 at 4-5). Doc. Ent. 9 at 2-4. In doing so, plaintiff appears to cite portions of MDCH's "Your Rights When Receiving Mental Health Services in Michigan."[14] For example, plaintiff arguably refers to the portion of the MDCH's Rights Booklet which concerns "Civil Rights" and relies in part upon Mich. Admin. Code R. 330.7009 ("Civil rights."). Plaintiff claims that, "[a]s a mental health patient [he] is [e]ntitled to equal rights and the right not to be discriminated against." Plaintiff claims that defendant Cheetum "violated this right by not giving [him] this respect[.]" Doc. Ent. 9 at 2 ¶ 1.

Plaintiff also refers to the portion of the MDCH's Rights Booklet which is titled, "Freedom from Abuse and Neglect." This section of the booklet relies upon Mich. Comp. Laws § 330.1722 ("Abuse or neglect of mental health service recipients") and Mich. Admin. Code R.

---

[14]*See* http://www.michigan.gov/documents/mdch/RightsBooklet.

330.7035 ("Abuse or neglect of recipients."). Here, plaintiff claims that defendant Cheetum verbally and mentally abused him. Also, he claims that Cheetum's "yelling and scre[a]ming made [him] have a[n] anxi[e]ty attack by making him take some meds he had not known what they were." Doc. Ent. 9 at 3 ¶ 2.

Additionally, plaintiff refers to the portion of the MDCH's Rights Booklet which is labeled, "Dignity and Respect." This section of the booklet relies in part upon Mich. Comp. Laws § 330.1704 ("Rights of recipients of services"). According to plaintiff, he "asked Nurse Cheetum about the meds he could not identify but she became irate and started to yell 'take the [expletive] [medicine] [expletive] now.[']" Doc. Ent. 9 at 3 ¶ 3.[15]

Finally, plaintiff addresses harassment, complaints and retaliation. Specifically, plaintiff states:

> This plaintiff tr[i]ed to make amends but Nurse Cheetum would not stop h[a]rassing him. Mr. Hernandez filed complaints, Nurse Cheetum complain[ed] to officers who continue to ha[r]ass Mr. Hernandez. Officers attacked Mr. Hernandez over Miss Cheetum. . . . Nurse Cheetum contin[ues] to ha[r]ass Mr. Hernandez and that [is] what this suit is about[,] abuse, neglect, and continued ha[r]assment. This plaintiff can't run away or just leave, this person told Mr. Hernandez to his face[,] "I hold grudges" and even has a[n] Officer Jones who she has follow her and write bog[u]s tickets on and ev[e]n take the visits of recipients.

Doc. Ent. 9 at 4 ¶ 4.

**3.** In their motion, defendants explain that "[i]n 2010, Jail Division I ('the main jail') housed the mental health floor." Defendants also explain that "[n]urses from Division I also distribute

---

[15]Dignity and respect are also mentioned in Mich. Comp. Laws § 330.1708 ("Standard for mental health services"); Mich. Comp. Laws § 330.1711 ("Family members of recipients") and Mich. Comp. Laws § 330.1752 (""Written policies and procedures, establishment, contents").

9

medications to inmates housed in Division II ('the old Jail', directly across the street from the main Jail)[.]" Doc. Ent. 27 at 10.

Generally, defendants claim "the pills Plaintiff was told to take at night were prescribed medications, the 'liquid' he complains of was fruit juice to help him swallow the pills, and his belief that Nurse Cheetum is out to 'get him' is a symptom of his severe and chronic mental illness." Doc. Ent. 27 at 9-10.

Specifically, defendants contend that plaintiff "has failed to identify the nature of his medical need and in what manner Defendants denied him medical care." Doc. Ent. 27 at 11. In support of their argument that defendants "provided Plaintiff with adequate medical care by disbursing his medications daily in accordance with proscribed times[,]" defendants explain:

> Regardless of whether or not Plaintiff received his medications before or after other inmates, the fact still remains that Plaintiff did indeed receive his medications daily. Furthermore, Defendants were not deliberately indifferent to Plaintiff's medical needs when giving Plaintiff fruit juice. The fruit juice supplied to Plaintiff for medical purposes, not to make him sick in any way. There was no substantial risk which did or could have arose from providing Plaintiff with the juice to assist him in taking his medications. This is a simple case of the Plaintiff and Defendants having different judgments as to the appropriate medical treatment.

Doc. Ent. 27 at 13. Thus, defendants contend, "Plaintiff in this case has failed to state a viable claim that Defendants deprived him of adequate medical treatment." *Id*.

Next, defendants contend they are entitled to qualified immunity. Doc. Ent. 27 at 14-16. In so doing, they allege that "[i]n the case at bar, Defendants were acting within their official duties when supplying Plaintiff with his mental health medications." Doc. Ent. 27 at 15. It is defendants' position that:

> In order to properly distribute the proscribed medicines, juice was needed to ensure that said medications we[re] able to be swallowed [by] Plaintiff. Any

10

> person working in the mental health field would perceive the use of juice as a supplement needed for swallowing of certain medications. By giving the Plaintiff juice, Defendants clearly believed they were undertaking lawful conduct which conformed to the appropriate standards of the mental health profession.

Doc. Ent. 27 at 15-16. Additionally, defendants contend:

> Furthermore, even assuming arguendo, that Plaintiff had in fact identified a clearly established right, Plaintiff has failed to provide any evidence whatsoever that the Defendants clearly understood that the use of fruit juice violated the Plaintiff's alleged clearly established rights. In fact, Plaintiff has had over a year to present such evidence and has failed to do so.

Doc. Ent. 27 at 16. Therefore, defendants contend, they "are entitled to the defense of qualified immunity." *Id*.

Finally, defendants claim that plaintiff "has failed to allege or even mention any of Defendant [DWCMHA's] polic[ies] or custom[s] which caused the Plaintiff to suffer an injury." Therefore, defendants contend, DWCMHA "cannot be held liable under § 1983." Doc. Ent. 27 at 18.

**4.** In her March 23, 2012 affidavit, Tango W. Cheatham identifies herself as "employed by the County of Wayne as a Registered Nurse assigned to work in the Wayne County Jails." Cheatham attests that, "[i]n 2010, [she] worked the afternoon shift in Jails Divisions I and II." Her duties included distributing "evening medications to inmates." Doc. Ent. 27-1 ¶ 1.

According to Cheatham, "Christopher Hernandez is well-known to [her], he is a former inmate in the [WCJ]. Mr. Hernandez is mentally ill." Doc. Ent. 27-1 ¶ 2. Cheatham attests that plaintiff's April 2010 prescriptions included taking 4 tablets of Topiramate at bedtime; 1 tablet of

Seroquel at night; 1 tablet of DOK / Colace at night; 1 round teaspoonful of Metamucil in water or juice at night; and 150 mg of Doxepin in water or juice at night.  Doc. Ent. 27-1 ¶ 3.[16]

Cheatham contends that plaintiff "can be a very difficult patient, sometimes refusing to take his medications."  Cheatham explains that "[s]ometimes [she] had to prompt him to take his medications at night, sometimes soft, sometimes stern, words of warning."  Doc. Ent. 27-1 ¶ 4.  According to Cheatham, "Nursing Staff had to prompt Plaintiff to take his medications - including the purple liquid he complains of in this lawsuit - which, in reality, was fruit juice with Metamucil & Doxepin mixed in."  Doc. Ent. 27-1 ¶ 5.

**5.     The Court should grant defendants DWCCMHA and Cheetum's March 28, 2012 motion for summary judgment (Doc. Ent. 27) to the extent plaintiff Hernandez sues these defendants in their individual or personal capacities for damages.**

"The underlying purpose of the Mental Health Code is to set certain standards and requirements for the treatment of recipients of mental health services by the staff and employees of mental health facilities."  *Ross v. Consumers Power Co.*, 420 Mich. 567, 692, 363 N.W.2d 641, 695-696 (1984).  In part, it provides that "[a] recipient of mental health services shall not be subjected to *abuse or neglect*."  Mich. Comp. Laws § 330.7122(1) (emphasis added).  "The department, each community mental health services program, each licensed hospital, and each service provider under contract with the department, community mental health services program,

---

[16]According to the U.S. National Library of Medicine, National Institutes of Health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/, "Topiramate is in a class of medications called anticonvulsants[;]" Seroquel® or "Quetiapine is in a class of medications called atypical antipsychotics[;]" Colace® is a stool softener; Metamucil® or "Psyllium, a bulk-forming laxative, is used to treat constipation[;]" and "Doxepin is in a class of medications called tricyclic antidepressants."

or licensed hospital shall ensure that appropriate disciplinary action is taken against those who have engaged in *abuse or neglect*." Mich. Comp. Laws § 330.7122(2) (emphasis added).

"A recipient of mental health services who is *abused or neglected* has a right to pursue injunctive and other appropriate civil relief." Mich. Comp. Laws § 330.7122(3) (emphasis added). Perhaps this is the statute upon which plaintiff Hernandez relied on in drafting his February 1, 2011 complaint about the conditions of confinement during his incarceration on the mental health floor in WCJ Division I (the main jail) or following his move to WCJ Division II (the old jail). Doc. Ent. 1 at 3-4. Moreover, in his March 7, 2011 response, plaintiff states that "[t]his lawsuit is the only way Mr. Hernandez could continue the process from complai[nt] to the Department of Health." Doc. Ent. 9 at 4.

Even so, the Court should conclude that there is "no genuine dispute as to any material fact" as to an Eighth Amendment claim of deliberate indifference to a serious medical need. Fed. R. Civ. P. 56(a). An Eighth Amendment claim of deliberate indifference to a serious medical need has two components - one objective and one subjective. "[T]he objective component of an Eighth Amendment prison claim [is][,] [']Was the deprivation sufficiently serious?[']" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[T]he subjective component [is][,] [']Did the officials act with a sufficiently culpable state of mind?[']" *Wilson*, 501 U.S. at 298. Even if plaintiff had established a serious medical need, defendant Cheetum has attested that, in April 2010, doctors prescribed several medications to be taken by plaintiff at bedtime (Doc. Ent. 27-1 ¶ 3) and has further attested that the liquid of which plaintiff complains was fruit juice into which was mixed Metamucil and Doxepin (Doc. Ent. 27-1 ¶ 5).

Furthermore, "[a] retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Even if plaintiff's Recipient Rights Complaint received on May 10, 2010 (*see* Doc. Ent. 11 at 6, #15101) or plaintiff's request for an appeal received on October 8, 2010 (see Doc. Ent. 11 at 4-5, AP 10-12-03, #15100) or plaintiff's Recipient Rights Appeal received on January 13, 2011 (see Doc. Ent. 11 at 13, #2011-15733 RR2) were plaintiff's protected activity, plaintiff's claims that Nurse Cheetum was mentally torturing plaintiff, had the officers "jump" plaintiff, was giving plaintiff a hard time, had officers write tickets on plaintiff, caused plaintiff's visits to be taken away or tried to kill plaintiff (Doc. Ent. 1 at 3-4) are conclusory. Furthermore, defendant Cheetum attests that plaintiff "is well-known to [her]" and "is mentally ill." Doc. Ent. 27-1 ¶ 2. And, Cheetum has attested that plaintiff could be a difficult patient, sometimes refusing to take his medications and that, sometimes, she had to use stern words of warning. Doc. Ent. 27-1 ¶ 4. Finally, even if Cheetum told plaintiff that "she holds grudges[,]" Doc. Ent. 1 at 4, and even though plaintiff's Recipient Rights Complaint received on May 10, 2010 took issue with defendant Cheetum (*see* Doc. Ent. 11 at 9-10, #15101), Cheetum has attested that she "did not know Mr. Hernandez filed any type of complaint with the County or State, nor did [she] know Mr. Hernandez was assaulted or harassed by other inmates or Deputies until this lawsuit was filed." Doc. Ent. 27-1 ¶ 6.

**6.      To the extent plaintiff Hernandez asserts claims for damages against defendants in their official capacities, he has not stated a claim for municipal liability.**  Defendant Cheetum is a Wayne County employee.  Doc. Ent. 27-1 ¶ 1.  Furthermore, Wayne County has a Health & Human Services Department (HHS), within which is a Mental Health Department, apparently known as the Detroit-Wayne County Community Mental Health Agency (DWCCMHA).  *See* www.waynecounty.com, Departments, Health & Human Services, Divisions/Programs, Mental Health Department.

Therefore, this report and recommendation treats defendant Cheetum and defendant DWCCMHA as Wayne County defendants.  Furthermore, noting that plaintiff Hernandez sues defendants in their personal *and* official capacities (Doc. Ent. 1 at 1), this report interprets any official capacity claims brought against defendants Cheetum and DWCCMHA as a suit directly against Wayne County.  *See*, *i.e.*, *Stemler v. City of Florence*, 126 F.3d 856, 864 n.8 (6th Cir. 1997).

As an initial matter, I note that "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."  *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Therefore, if the Court agrees with my foregoing recommendation, it need not consider whether plaintiff Hernandez's official capacity claims for damages against the municipal defendants survive summary judgment.

However, even assuming that plaintiff Hernandez's claims for damages against individual defendant Cheetum survive summary judgment, his claims for damages against the municipal

defendants in their official capacities do not. This is so, because plaintiff Hernandez has not stated a claim for municipal liability.

"Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom." *Slusher v. Carson*, 540 F.3d 449, 456 -457 (6th Cir. 2008) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694-695 (1978), *Cummings v. City of Akron*, 418 F.3d 676, 684-685 (6th Cir. 2005)). In other words, "[w]hile a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler*, 126 F.3d at 865. "Therefore, in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality." *Stemler*, 126 F.3d at 865. *See also Frost v. Hawkins County Bd. Of Educ.*, 851 F.2d 822, 827-829 (6th Cir. 1988).

This report and recommendation assumes that any official capacity claim by plaintiff Hernandez against county defendants DWCCMHA and Cheetum is based upon an alleged failure to train, the central case for which is *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). *See Criswell v. Wayne County, Kentucky*, No. 97-5971, 1998 WL 598739, *5-*6 (6th Cir. Aug. 27, 1998). In *Canton*, the Supreme Court instructed that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. In other words, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. at 389. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be liable for such a failure under § 1983." *Id*.

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-391. "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391. "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id*. "[W]hile claims such as respondent's - alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered - are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id*. at 392.

In support of their argument that "Plaintiff Has Failed To State A Cause of Action Under 42 U.S.C. § 1983[,]" Doc. Ent. 27 at 16-18, defendants claim that "[p]laintiff has failed to allege or even mention any of Defendant Detroit-Wayne County Mental Health Agency[']s] polic[ies] or custom[s] which caused the Plaintiff to suffer an injury. Therefore, Defendant Detroit-Wayne County Mental Health Agency cannot be held liable under § 1983." Doc. Ent. 27 at 18.

Having considered plaintiff's February 1, 2011 complaint, specifically the "Statement of Facts" and the "Relief" set forth above, *see* Doc. Ent. 1 at 3-4, the Court should conclude that plaintiff has not identified or complained of a Wayne County policy or custom upon which a municipal liability claim against the Wayne County defendants may be based. At most, plaintiff's

17

complaint (Doc. Ent. 1 at 3-4) and plaintiff's March 7, 2011 filing (Doc. Ent. 9) allege that Mich. Admin. Code Rules 330.7009 and/or 330.7035 or Mich. Comp. Laws §§ 330.1704 and/or 330.1722 were violated. These are state statutes and rules, not those of Wayne County.

**7.    Plaintiff Hernandez's claims for injunctive relief were rendered moot by his transfer from WCJ.**  Plaintiff Hernandez's February 1, 2011 complaint (Doc. Ent. 1), is based upon the conditions of confinement at WCJ. Perhaps plaintiff was incarcerated at WCJ from the time of his apparent June 2009 arrest. *See* Case No. 4:11-cv-10805-MAG-RSW [Doc. Ent. 1]. In any event, the complaint in the instant case indicates that plaintiff was incarcerated on WCJ's mental health floor around April 2010 (Doc. Ent. 1 at 3), and WCJ was still plaintiff's address as of the filing of his February 1, 2011 complaint (Doc. Ent. 1 at 1). It appears plaintiff remained at WCJ at least until his June 29, 2011 notification to the Court that he would be transferred to the MDOC's JCS during July 2011 (Doc. Ent. 18).

Assuming that Hernandez's February 1, 2011 complaint (Doc. Ent. 1) is based on the conditions of confinement plaintiff allegedly encountered while at WCJ from approximately April 2010 to July 2011, his claims for injunctive relief against DWCCMHA and Cheetum were rendered moot by his July 2011 transfer from WCJ. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."). In other words, plaintiff Hernandez's transfer from WCJ renders his February 1, 2011 complaint (Doc. Ent. 1) moot to the extent it seeks injunctive relief against defendants DWCCMHA and Cheetum based upon their actions while plaintiff Hernandez was incarcerated at WCJ.

**8.      Defendants' request for "an award of costs and attorney fees incurred in defense of this action[,]" is premature.**  *See* **Doc. Ent. 27 at 1, 18.**  Should the Court enter judgment in favor of defendants, they may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 ("Taxation of costs") and Fed. R. Civ. P. 54(d)(1).  If defendants seek attorney fees pursuant to 42 U.S.C. § 1988 ("Proceedings in vindication of civil rights"), they should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

Dated:  March 4, 2013                               S/Paul J. Komives
                                                    Paul J. Komives
                                                    United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 4, 2013, by electronic and/or ordinary mail.

                                                    S/Shawntel R. Jackson
                                                    Case Manager